UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**F I L E D**

APR 2 7 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-268-GWU

DAVID W. MANNING,                                                  PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to
    Step 4. If no, the claimant is not disabled. See 20 CFR
    404.1520(c), 404.1521, 416.920(c), 461.921.

1

Manning

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Manning

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Manning

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.   If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Manning

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls; by definition, a

person capable of this level of activity must have the ability to do substantially all

these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the

capacity to lift no more than ten pounds at a time and occasionally lift or carry small

articles and an occasional amount of walking and standing. 20 CFR 404.1567(a),

416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental contaminants

. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the

Commissioner may still use the rules as a framework for decision-making, 20 CFR

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record

reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

6

Manning

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  Varley  v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David W. Manning, was found by an Administrative Law Judge

(ALJ) to have severe impairments consisting of discogenic and degenerative

disorders of the back and "disorders of the muscle, ligaments, and fascia." (Tr. 16).

Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ

determined that Mr. Manning retained the residual functional capacity to perform a

significant number of jobs existing in the economy and, accordingly, was not entitled

to benefits.  (Tr. 18-22).  The Appeals Council declined to review, and this action

followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age, education, and work experience could perform any jobs if he were

limited to lifting 20 pounds occasionally and 10 pounds frequently, and also had the

following non-exertional restrictions.  (Tr. 216).  He: (1) could stand and/or walk for

about six hours in an eight-hour day, and sit for a total of about six hours in an eight-

hour day; (2) could push and pull with hand or foot controls within the exertional

limitations previously stated; (3) could occasionally climb ladders, ropes, and

scaffolds, and stoop and crawl; and (4) could frequently climb ramps and stairs,

balance, kneel, and crouch. (Tr. 216-17).  The VE responded that there were jobs

7

that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 217).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Medical evidence in the transcript confirms the plaintiff's testimony (Tr. 202) that he had a lumbar laminectomy and excision of a lumbar disc in 1992 (Tr. 110, 113-14). After a period of incarceration, he had returned to work as a glass installer for a time, but had been unable to continue past 1999, and had some unsuccessful attempts at work release employment in 2001. (Tr. 194-7). His family physician, Dr. Dennis Ulrich, had referred him to a neurosurgeon, Dr. William Brooks, for evaluation of continuing back pain with radiation to the legs, but Dr. Brooks had reported there was nothing that could be done, and advised him not to return to work. (Tr. 201-3).

Medical evidence in the transcript includes records from Dr. Ulrich, who submitted office notes showing that he had treated Mr. Manning between 1999 and at least September, 2002, for complaints of shoulder pain, back pain, high blood pressure, and other transient conditions. (Tr. 154-63). He referred Mr. Manning to the neurosurgeon, Dr. Brooks, for evaluation of his back pain, after obtaining an MRI of the lumbosacral spine in January, 2002 which showed degenerative disc disease, and loss of disc height at L4-L5 and L5-S1, disc desiccation, and mild osteophyte

8

Manning

production, but no disc herniation or spinal stenosis. (Tr. 138). Dr. Brooks obtained

another MRI, which was read as showing degenerative disc changes at L4-L5 and

L5-S1, and evidence of the previous laminectomy at L5-S1, but no evidence of

recurrent or residual disc herniation. (Tr. 142). Dr. Brooks described the MRI as

showing postoperative scar formation, but felt that it had nothing that would lend

itself to surgical intervention. (Tr. 146). He referred his patient to Dr. Rahul Dixit for

consideration of epidural steroid injections in view of the patient's persistent pain in

the back and left leg. Dr. Dixit's examination showed a limited and painful range of

motion of the lumbar spine, and positive straight leg raising on the right at 70

degrees, although there were no reflex, sensory, or motor deficits. (Tr. 140). The

patient was very tender in the sacroiliac region on the right side and had a mild

muscle spasm. (Id.). An epidural steroid injection was given, but the plaintiff did not

return to this source. (Tr. 141). Dr. Brooks indicated in November, 2002 that Mr.

Manning continued to worsen and "unfortunately he is about as good as he is going

to get." (Tr. 144). He opined that the plaintiff was "totally and permanently

disabled." (Id.). In March, 2003, Dr. Brooks prepared a residual functional capacity

assessment opining that Mr. Manning could lift and carry less than 10 pounds both

occasionally and frequently, could stand or walk for less than two hours in an eight-

hour day (no more than 10 to 20 minutes without interruption), would have no

restrictions on his ability to sit, could "never" climb, balance, crouch, kneel, and

crawl, and had a limited ability to push and pull. (Tr. 150-3).

9

Manning

Dr. Ulrich, who had continued to see the plaintiff for both shoulder pain, which

he injected with Decadron in March, 2002, and for stiffness and pain in his back, for

which the physician prescribed Ultracet and Vioxx. (Tr. 154-5). In August, 2003, Dr.

Ulrich prepared a residual functional capacity form limiting the plaintiff to lifting less

than five pounds, standing or walking less than one hour in an eight-hour day, sitting

less than one hour in an eight-hour day, never climbing, balancing, crouching,

kneeling, or crawling, and having restrictions on reaching, pushing, pulling, seeing,

heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes,

humidity, and vibration. (Tr. 182-4). Clearly, the standing/walking/sitting restrictions

would limit Mr. Manning to less than full-time work.

The ALJ rejected the opinions of both Dr. Brooks and Dr. Ulrich because she

felt they were not supported by sufficient objective evidence. Instead, she followed

restrictions given by non-examining state agency sources, only one of whom

appears to be a physician, who reviewed only a portion of the record and completed

functional capacity assessments in 2002, well before Dr. Ulrich and Dr. Brooks had

submitted their more restrictive opinions. (Tr. 164-79).

While the opinion of a non-examining source may be accepted over that of

an examiner, the non-examiner must have had access to the entire record and

clearly commented on the reasons that his opinions differ from the examiner. Barker

v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, the state agency

physician, Dr. Saranga, had no opportunity to review or comment on the opinions of

10

Manning

the treating sources.[1]   Essentially, the ALJ substituted her lay opinion of the severity

of the plaintiff's condition for that of two treating sources, including a treating

neurosurgeon.   While even a treating source is not entitled to complete deference

without sufficient signs, symptoms, and laboratory findings to support his opinion,

see, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), the plaintiff's history

of back surgery and subsequent scar tissue formation and degeneration is not so

clearly incapable of producing the restrictions given by the treating sources that the

ALJ could completely discount their opinions. If these treating sources are to be

ignored, the ALJ should at least have obtained an opinion from a medical expert with

access to the entire record.

The decision will be remanded for further consideration.

This the ___ 27 ___ day of April, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[1]In fact, he made virtually no independent comments of any kind on what medical evidence was available to him, confining himself primarily to stating that he agreed with the prior state agency reviewer, who does not even appear to be an acceptable medical source under the Commissioner's regulations.  20 C.F.R. Section 404.1513 (2004).

11